THE PEOPLE, for use of Thomas McKee

*v.*

DANIEL ABBOTT *et al.*

*Filed at Ottawa November 20, 1882—Rehearing denied March Term, 1883.*

1. ADMINISTRATION—*compelling surrender of notes to administrator.* It does not follow, when another party is in possession of goods, chattels, etc., of a deceased person, that the court *shall* order that the same be delivered to the administrator, under section 80, chapter 3, Rev. Stat. 1874. If the order can accomplish no substantial good it should not be made. The court is invested with a discretion, and is not compelled, as a matter of arbitrary law, to make any specific order. This discretion is not unlimited, but should be exercised so as to best preserve the estate, and promote its honest, complete and prompt administration.

2. Although a proceeding under that section of the statute is a statutory and not an equitable proceeding, the court, as in the allowance of claims against an estate, should look beyond the mere legal right, and protect the equitable right of possession. Hence the court should not require the equitable owner of promissory notes, made payable to a deceased person, to deliver them to the administrator of the estate, when not required for the payment of debts of the estate or for the purposes of distribution.

3. SAME—*when not necessary.* Where the husband, the sole heir of his wife as to her personal estate, has paid all her debts and liabilities, and as such heir, and having the possession of all her personal estate, makes a voluntary disposition of promissory notes payable to his wife, and no administration is necessary to collect the notes, the appointment of an administrator is unnecessary, and if appointed he will not be entitled, as a matter of right, to have the husband's equitable assignee surrender such notes to him merely to collect them, and charge his commissions on the amount when collected.

4. ASSIGNMENT—*equitable assignee protected.* Where the sole heir of a deceased person voluntarily parts with whatever title he had to notes of the decedent, should the administrator collect the same and pay the money over to him, he not being equitably entitled to the same, a court of equity would compel him to pay the amount over to the equitable assignee.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

This is an appeal from a judgment of the Appellate Court
for the Second District, reversing a judgment of the circuit
court of Knox county.   The case was a proceeding instituted
by Thomas McKee, as administrator of the estate of Kate H.
Lee, deceased, in the county court of Knox county, against
Daniel Abbott and Louisa McCall, as executors of the last
will and testament of Catharine Dwire, deceased, under sec-
tion 80, of chapter 3, Rev. Stat. 1874, entitled "Administra-
tion of Estates," to compel the latter to deliver to the former
certain promissory notes claimed to belong to the estate of
said Kate H. Lee, deceased.   The circuit court ordered that
the notes be delivered as sought by the proceeding, but on
appeal to the Appellate Court for the Second District that
court reversed this order of the circuit court; and inasmuch
as such judgment was, wholly or in part, the result of the
finding of the facts concerning the matters in controversy
different from the finding of the circuit court, said court
recited, in its final order and judgment, the facts as found
by it, after the caption, as follows :

"That Mrs. Kate H. Lee died on the 21st day of Decem-
ber, A. D. 1876, intestate, leaving a surviving husband,
Henry R. Lee, but leaving no children or descendants of
children; that at the time of her death she was the owner
of a piece of real estate in the State of Iowa, and was also
possessed of about $14,000 worth of personal property, a
portion of which is the notes in controversy, and for which
the order in this case was entered in the circuit court, or
for the proceeds of such of the notes as had been collected
by the appellants; that after the death of Mrs. Lee the said
Henry R. Lee took and retained possession of all the per-
sonal estate until the time of the division of the property
hereinafter mentioned, and after that time still retained all
of it except that portion delivered to Mrs. Dwire; that on
the 8th day of January, 1877, the surviving husband, Henry

R. Lee, and the mother of Mrs. Lee, (Mrs. Catharine Dwire,) entered into the following contract in writing:

" 'Articles of agreement between Henry R. Lee, of Galesburg, and Mrs. Catharine Dwire, of Canton: It is agreed and fully understood between, viz., ourselves, Mrs. Catharine Dwire and Henry R. Lee, that the property, both real and personal, belonging to Mrs. H. R. Lee, deceased, in her own right, shall be equally divided between Mrs. Catharine Dwire, her mother, and H. R. Lee, her husband, said division to take place after all her debts are fully paid, including funeral expenses. And it is further agreed, that in case Mrs. Catharine Dwire should die first, her one-half interest shall go to Henry R. Lee; and if Henry R. Lee should die first, then his one-half shall go to Mrs. Catharine Dwire.

" 'We hereunto set our hands this 8th day of January, 1877.

[Signed]

H. R. LEE,
CATHARINE DWIRE.'

"That in February, 1877, the parties to said contract divided the property of Mrs. Lee between them, Mrs. Dwire, at the time of the division, claiming that what she received paid her in full for all her daughter was owing her, but aside from such claim of Mrs. Dwire there is no evidence of any indebtedness to her, nor of the character or amount of such; that prior to such division of the property the said Henry R. Lee had paid all the debts and funeral expenses of the intestate, (except the debt of Mrs. Dwire, if any such existed,) and any claim of Mrs. Dwire was satisfied by such division of the property; that in such division of the property Mrs. Dwire took the Iowa land, and a sufficient amount of notes, and some money and other property, to make one-half of the property, Mr. Lee retaining his share of one-half in personal property; that the notes taken by Mrs. Dwire were each indorsed by Mr. Lee and delivered to her, and she took them with her to her residence in Fulton county, and that she, at

the time of her death, retained the notes named in the decretal order entered in this cause; that Mrs. Dwire departed this life testate, on or about the 24th day of April, 1879, by her will nominating the appellants her executors who were afterwards, on the 10th day of May, duly appointed, by the county court of Fulton county, executors of her estate, and entered upon their duties as such, and on July 21 filed in said court an inventory of the personal estate, in which was included the said notes, for which, or the proceeds thereof, the order in this case was rendered; that at the time the citation was served upon the appellants, they had in their hands the notes for the surrender of which the decree was entered, and the proceeds of other notes collected by them, to the amount named in the said decree; that on the 19th day of February, A. D. 1880, the said Henry R. Lee filed his petition in the county court of Knox county, it being the county of Mrs. Lee's residence at the time of her death, praying for the appointment of Thomas McKee as administrator of the estate of Mrs. Kate H. Lee; that letters were issued to him, dated March 15, 1880, and he qualified as such administrator; that thereafter, and before the commencement of this proceeding, he made a demand in writing upon the appellants for the personal property so received by Mrs. Dwire, upon the division aforesaid, and that they refused to comply with such demand; that said Henry R. Lee prepared and had filed an inventory of the estate of Mrs. Lee, and had the adjustment day named, but no debts were then, nor have there been since, to the day of the trial in the circuit court of this cause, proved against the estate of Mrs. Lee; that said McKee has himself taken no interest in the administration of said estate, and has not received or taken from said Lee any of the estate retained by him upon the division aforesaid, and we find that his appointment was obtained by said Henry R. Lee for the sole purpose of commencing these proceedings."

The errors assigned are :

*First*—The Appellate Court erred in not affirming the judgment and order of the circuit court.

*Second*—The Appellate Court erred in reversing the judgment and order of the circuit court.

*Third*—If the judgment of the circuit court was properly reversed, then the cause should have been remanded.

*Fourth*—The Appellate Court erred in not permitting the cause to stand as "decided upon its merits."

Messrs. McKENZIE & CALKINS, for the appellants.

Messrs. WILLIAMS & LAWRENCE, and Mr. JOHN A. GRAY, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court :

This is a summary statutory proceeding, under section 80, chapter 3, of the Revised Statutes of 1874, page 118. It does not follow because it is proved another party is in possession of goods, chattels, etc., of the deceased, that the court shall order that the same be delivered to the executor or administrator. The language is, the court "*may*" examine the party under oath, and "hear the testimony of such executor or administrator, and other evidence offered by either party, and *make such order in the premises as the case may require.*" If the order can accomplish no substantial good, clearly the case does not require that it be made. The court is vested with a discretion, and not compelled, as a matter of arbitrary law, to make any specific order. This discretion, of course, is not unlimited, but should be exercised so as to best preserve the estate, and promote its honest, complete and prompt administration. But no arbitrary rule of law intervenes, requiring the doing of purely formal or useless acts.

This court has held that the county court, in allowing claims against estates, is not limited to the technical legal rights of parties, but should act upon their equities. (*Dixon, Assignee* v. *Buell, Admr.* 21 Ill. 203 ; *Moore* v. *Rogers,* 19 id. 847.) The principle is applicable here. We do not conceive it was ever intended the county court should order property to be delivered by its equitable owner to an executor or administrator who happened to be simply the technical legal owner. In such case, as in the allowance of claims against estates, the court should look beyond the mere legal right, and protect the equitable right of possession. It is quite true this is not an equitable proceeding,—it is purely statutory,—but in enforcing statutory proceedings it is not uncommon to look to and protect the equitable rights. Indeed, instances are not wanting, where, by statute, purely equitable defences have been allowed to be interposed in common law suits,—and yet, in all such cases, the suit still remains, technically, one at law.

In *Lewis* v. *Lyons et al.* 13 Ill. 117, it was held a court of equity will not require an heir to pay over money to an administrator when such administrator has no debts to pay, nor any use to make of it connected with the estate, merely that he may retain it for his own benefit, or be paid his costs and commissions. And in *Dorman et ux.* v. *Tost et al.* 13 Ill. 127, and *Fitzgerald* v. *Glancy, Admr.* 49 id. 465, it was held that real estate could not be sold by an administrator where there were no debts owed by the intestate at the time of his death. In the last named case the court, among other things, said: "We concur fully with the Supreme Court of Pennsylvania, in *Walworth* v. *Able,* 52 Penn. 370, and with the Supreme Court of Missouri, in *Farrar* v. *Dean,* 24 Mo. 16, that where there are no debts at the time letters of administration are granted, and no question of distribution requiring the intervention of an administrator, the expenses of administering,—the result of unnecessary inter-

ference,—can not be regarded such a debt as would justify a proceeding to sell the lands. Such costs and expenses are not due by the deceased, and only arise from the officious and unnecessary intermeddling of the administrator." If this be sound, it must necessarily rest upon the principle that in such case there was no legal necessity for the appointment of the administrator, for if there was a legal necessity for his appointment, the consequent costs would, manifestly, be a legal charge against his estate; but there being no debts to pay, and no personal estate to distribute, there was nothing for an administrator to do. Under the facts found, there was as little here for an administrator to do, as there. The debts were all paid by the husband, and he was the sole heir of the personal property. Being in possession, there was no need of an administrator to obtain possession. It is true an administrator is the proper party to sue upon notes payable to the intestate, as held in *Leamon et al.* v. *McCubbin et al.* 82 Ill. 263; but where no such suits are to be brought, there can, of course, be no necessity for an administrator for that purpose.

Upon the death of Mrs. Kate Lee, her husband, Henry R. Lee, was the sole heir of her personal estate, she having left neither children nor descendants of children surviving her. He was entitled to all her personal property after the payment of her debts. As was said in *Lewis* v. *Lyons et al. supra:* "The administrator, it is true, may have the legal title to the personal estate,—not, however, in his own right, but as trustee, and for a particular purpose. When the debts are paid the heir is the *cestui que trust,* and as such is entitled to the surplus of the assets after the debts are paid. There being no debts unpaid in this case, the heir has the entire equitable interest." This interest was here coupled with the actual possession of the property. Obviously, it concerned no one but Lee what then became of that property. He might sell it or give it away, as he chose; and after having

disposed of the promissory notes voluntarily, and without fraud on either side, it could no further concern him that his equitable assignee could not maintain an action at law on them in his own name.

To test the reasonableness of the position of the administrator here, let it be supposed Lee had himself brought an action for the possession of these notes. Surely it would admit of no controversy that he could have no standing. He voluntarily parted with whatever of title he had, and their possession, and nothing has since transpired to invest him with new or different rights in that regard,—and yet he seeks to do precisely the same thing in this form of proceeding. The facts found show that he procured the administrator to be appointed for the sole purpose of prosecuting this proceeding,—that is, to enable him to do indirectly what he could not do directly. If the notes be delivered to the administrator, he has only the duty of paying the proceeds to Lee; but Lee not being entitled to them equitably, he could be made, by the decree of a court of chancery, to pay them over to appellees. It would be an unreasonable doctrine if the equitable assignee and lawful holder of a promissory note could be compelled, without his consent, to give it up to an administrator, and to pay him the costs of collection, when the maker stood ready and willing to pay the note without suit, and without expense or delay,—and yet the position of the appellant comes precisely to this.

There may be a necessity for an administrator even where there are no debts, for the purpose of collection and distribution; but where there are no debts, and the property is already distributed, and there are no suits to be brought, there can be no necessity for an administrator. The law does not make it indispensable that every estate shall be administered, merely for the sake of administration. What is here said has no reference to any rights Lee may have under the contract he made with Catharine Dwire. We

neither determine that he has, or has not, rights under that contract. If he has rights under it, he must enforce them in a suit in his own name. He can not enforce them in the present proceeding.

The opinion of the Appellate Court in this case, as reported in 10 Bradwell, 62, has our entire concurrence.

The judgment is affirmed.

*Judgment affirmed.*