Schwab v. Chicago Consolidated Trac. Co., 155 Ill. App. 643.

when Mr. Utt was appointed administrator *de bonis non.* It is therefore immaterial what he may have said to the claimant after his appointment. His representation to the claimant that he had until the Spring of 1907 to file his claim was a representation as to matter of law.

We do not think that because of such representation, made before his appointment as administrator, he, as administrator, was estopped from insisting on the bar of the statute, and the judgment of the Circuit Court will be affirmed.

*Affirmed.*

---

## John W. Schwab, Appellee, v. Chicago Consolidated Traction Company, Appellant.

### Gen. No. 15,097.

1. TRIAL—*what conduct of judge not improper.* While it is not proper for a judge to undertake to influence the jury upon questions of fact, it is entirely within his province if he does not understand the testimony of a witness to ask him concerning such testimony and to seek to make that clear which otherwise would be ambiguous.

2. INSTRUCTIONS—*what not exclusion of theory of intoxication.* Held, that if the instruction upon the question of the exercise of ordinary care criticised in this case did in fact exclude from the jury the alleged theory of the defense that the plaintiff was intoxicated at the time of the accident, yet complaint could not be made because the defendant had caused an instruction to be given which contained a like vice.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed June 2, 1910. *Certiorari* denied by Supreme Court (making opinion final).

JOHN A. ROSE and FRANK L. KRIETE, for appellant; W. W. GURLEY, of counsel.

CARLETON H. PENDLETON, for appellee.

644    Appellate Courts of Illinois.

Schwab v. Chicago Consolidated Trac. Co., 155 Ill. App. 643.

Mr. Justice Freeman delivered the opinion of the court.

This is an appeal from a judgment against the defendant in an action to recover for personal injuries.

It is contended by defendant's attorneys that "the verdict is not supported by and is against the weight of the evidence."

There is evidence on the part of plaintiff tending to show that on Christmas eve, 1906, at about eight o'clock he was a passenger riding on the rear platform of a motor car, which with a trailer constituted a train operated by the defendant upon its street car line on Lincoln avenue, Chicago. It appears from such evidence that at a point near the middle of the block between School street and Roscoe street there was a sudden jerk of the car, which had slacked up and been suddenly started again at full speed. The plaintiff testifies as follows: "With this jerk it bumped me up against the controller and pitched me forward head first out of the car, and I grabbed the nearest thing I could see. I grabbed the grab handle on the car and it tossed me round between the cars. I don't remember how I lit; I remember striking the street. The next thing I remember was the trailer passing over me, over my left leg at about the knee. It took the heel off my right shoe and badly bruised my right ankle." His left leg was crushed, and he was taken to the Alexian Brothers Hospital, where that leg was amputated about ten or twelve inches above the knee. His right leg was bruised and had some of the flesh of the calf of the leg torn off. There is evidence tending to show that the road bed at the point where the accident occurred was "paved from side to side with blocks" and was in such condition that, as is testified, "if we had a little rain, the next morning you would see the blocks swimming all over the street." It is stated by plaintiff's witnesses that the tracks were not level there, that "they were continually repairing that track," that "the rail was not heavy enough for them big cars" and that "it

was continually bump, bump, bump all the time;" that
the jerk at the time of the accident was unusual and
sudden, a hard jerk; that "the effect of the jerk on the
trailer car was that it gave such a jerk" that it
"bumped into the motor car; it gave an awful jerk;"
that the effect on men standing on the front platform
of the trailer car was that they fell "over toward the
end of the car;" that plaintiff was standing on the in-
side of the rear vestibule, facing in the direction the
cars were going; that as the cars started up the jerk
pitched him head first out of the car, "threw him hard
enough to go out of the car and down to the street;"
that "this jerk put the other passengers standing in
that vestibule off their balance" and caused the trailer
to crash into the motor car.

There is evidence on the part of the defense to the
effect that the plaintiff "rushed off," that he "jumped
off" and that he carelessly slipped and fell off the car.
It is argued that in view of the fact plaintiff had the
free use of his hands, it was a physical impossibility
in view of the character of the jerk described by plain-
tiff's witnesses, that he should have been thrown by it
bodily forward and off the car if at the time he was
capable of exercising and was exercising due care.   If
the jerk was as sudden and severe as it is said to have
been, we are not able to agree with defendant's counsel
that it was a physical impossibility for the accident to
have occurred as plaintiff says it did.   He seems from
his evidence to have made such use of his hands as any
man might reasonably be expected to make under sim-
ilar conditions.   It would have been better for him ap-
parently had he not so used them, for in such case ap-
parently he might have been thrown directly out on the
street and so escaped from being swung around to the
rear and under the wheels of the trailer behind.   It is
argued however that the jerk, if it occurred, is not un-
der the evidence attributable to negligence in the oper-
ation and management of the car.   The plaintiff says
he was standing on the rear platform, not on the steps

646    APPELLATE COURTS OF ILLINOIS.

Schwab v. Chicago Consolidated Trac. Co., 155 Ill. App. 643.

of the car, and that he stood out there because "the seats were all full and people standing in the aisles." Whether the accident occurred through negligence of the defendant was a question for the jury. There is evidence from which they might conclude as they did that it resulted from such negligence. It was also a question for the jury whether plaintiff was in the exercise of due care for his own safety. There is evidence tending to show the jerk in this instance was unusually severe and sudden, and evidence also from which the inference may be drawn that it was as said in defendant's brief, but "a little more than ordinary." It appears from the evidence the tracks were in such condition the jury might reasonably conclude that momentary negligence on the part of the operator of a car might cause a severe jerk or bump such as plaintiff testifies threw him suddenly to the street. The defendant contends that as there is evidence of two witnesses tending to show plaintiff was intoxicated he "may have been stupid enough to be uncertain and negligent." One witness testified that he believed plaintiff to have been under the influence of liquor, but there is evidence to the contrary and no good reason appears which would warrant us in setting aside the verdict supported as it is by sufficient credible evidence.

It is objected that the court made improper remarks prejudicial to appellant. One of defendant's witnesses testified that plaintiff "rushed right past me and jumped off." The court thereupon inquired, "Didn't you say he jumped off the car?" The witness replied, "Yes sir." No objection appears to have been made at the time and no exception was taken. If there had been objection, the contention that the question of the court was prejudicial is based on mere conjecture and so far as the record shows does not appear to be well founded. It is the duty of the trial judge to listen to and endeavor to comprehend testimony. If he does not hear it or if it is in any respect ambiguous,

we know of no reason why he may not ask the witness to make it clear. No basis exists in principle or precedent so far as we are aware which requires him to be a mere automaton. It is not of course proper for a trial judge to endeavor to influence a jury upon questions of fact which are exclusively within the jury's province. We find no reasonable cause to suppose the remark of the court referred to was prejudicial.

No material error appears in the rulings of the court on evidence to which objection is urged. The evidence tending to show a crowded condition of the cars, while it had no direct bearing on the negligence alleged in the declaration, seems to have been admitted without controversy. It tended however to explain why plaintiff was riding on the platform of the motor car. At the place of the accident there was a sign notifying patrons of the line that "cars stop here." It was proper to identify the place of the accident. That the conductor "grew angry" when signals to stop were given him at the time of the accident was brought out in answer to a question to which it was not perhaps fairly responsive; but the question was proper and the course of the conductor in jerking the bell cord to go ahead was part of the *res gestae*. What was done by him after the accident was not otherwise competent and had no relation to the question of negligence causing the injury. But it was not we think harmful in the present instance.

The evidence as to the condition of the road bed was competent. If the condition was bad, due caution was to be expected in management of the cars running over it at that point. Testimony as to the effect of the alleged jerk upon any part of the train, that it caused the trailer to bump into the motor car ahead and disturbed the equilibrium of other passengers, was competent.

It is urged the second instruction in behalf of plaintiff excluded from the jury the defendant's theory that plaintiff was drunk. The instruction defined ordinary care as that degree of care which persons of ordinary

prudence would ordinarily exercise for their own safety under the same circumstances which the jury believed from the evidence "surrounded the plaintiff before and at the time of his alleged injury." The instruction clearly referred to the physical circumstances surrounding him and the car itself, together with the condition of the road bed, not to plaintiff's physical condition. If it can be supposed the jury could understand the circumstances referred to in the instruction as including possible intoxication of the plaintiff, which would we think be a strained view, then what is said in Wilcke v. Henrotin, 241 Ill. 169-173, is in point, since defendant requested and obtained an instruction open to the same objection. Apparently neither party deemed it worth while under the evidence to submit instructions based upon the theory that the evidence warranted the jury in finding plaintiff to have been intoxicated at the time of the accident.

The damages awarded are large, but we are unable to say in view of the serious nature of plaintiff's injuries that the jury were not warranted in the amount of the verdict by the evidence. In such case the court is of opinion that interference would not be justified.

The judgment must be affirmed.

*Affirmed.*